Good morning. May it please the court. My name is Andy Nelson. I'm here on behalf of the appellant Kyle Robert Wick. I'm an assistant federal public defender in the Missoula Division of the Montana Court. We're here today on appeal following a trial. Mr. Wick was charged by superseding indictment with 12 counts, 12 distinct criminal counts. 11 of those were title 26 counts. We call them the final count, the sole count of conviction in this case. And the reason we're here is count 12, which was charged under title 18. And basically says that he manufactured and dealt in firearms as defined in federal law without a license. We've advanced two primary claims on appeal. The first I think is dispositive, need not reach the second issue. And that is simply that the plain statutory language of the respective definitions of firearms and machine guns in titles 28, 26 and 18 are different. That the language of construction, of animation, of moving from incomplete to complete appears only in title 26. And the jury acquitted Mr. Wick on all of those counts. So we have no finding in this case, recognizing that it's hard to decode precise jury findings based on a verdict. It's not like a civil case with findings of fact. But what I can say unequivocally is that there's no finding in this case that there's any machine gun at trial presented as evidence at this trial. Does it does it rest really on the readily converted phrase? I think it does, Your Honor, because that's where the district court in its order based its decision on that language. So I looked at your, I think it was your proposed instruction. Did you represent? I did. That's what I thought. Say Mr. Nelson. Yes. In the transcript. And your proposed jury instruction there didn't define readily converted. Did it? Well, you know, there is a there's a provision in the model instructions that say the jury is not supposed to be given a bunch of statutory definitions. But I'm asking you, did you propose a jury instruction with some alternate definition or further definition of readily converted? I didn't see it. No, Your Honor. The argument was that phrase doesn't apply and it doesn't apply for several reasons. One is the government's own firearms expert, Mr. Curtis, whose testimony is quoted somewhat extensively in the brief, and we have the advantage of a trial record here, didn't rely on that phrase. In fact, at one point, and I probably put this in the briefing too he specifically disavowed that language. He said that's not the basis for any of my opinions here. Whether something is a machine gun or a firearm that doesn't apply. Well, they did. The government's expert did talk about the ease of assembly here. You did talk about the ease of assembly. Your Honor. Isn't that kind of readily converted? Well, you'd have to look at the language of the statute, and that's the lens through which I'm looking at this. But it was that testimony regarded how long it would take to assemble the pieces of the receiver section. It's really the focus of the charge, the investigation, the trial. Everything in this case was about those receiver sections, which is like the body of a car to which all the other parts are appended and then make it a car or in this case a gun, right? So that testimony was about how long it would take someone to weld those back together. Yes, Your Honor. That is in the statute. But that language, the readily be converted language, importantly, and I think determinatively, doesn't appear in Title 18. We don't have that phrase in the state. I'm sorry. That's not right. What? Yeah, it's right. It's right there in the US. Let me let me phrase it differently. Title 26 talks about combination of parts from which a machine gun can be assembled. All that in Title 18. Yes, but Title 18 has its own way of referring to that. It does. The problem for the government, I think, based on your question, is that that's not the case they tried to the jury. Agent Curtis never said this could readily be converted. In fact, he said, I'm not relying on that phrase. I mean, it's an odd case because you have an expert coming in and telling the jury what is and what isn't a machine gun or a firearm under the statutes. Clearly, the jury, at least in part, disagreed with that expert's conclusions as to the machine gun counts. They acquitted him. That's what makes this case unique and interesting. Counsel, if I could interject a question on that. Please. Does the fact the jury acquits and says it's not a machine gun, does that really say anything about whether it's a firearm? Couldn't something be thought to be not a machine gun but be thought to be a firearm? Could a jury be making sort of a compromise because they didn't want him convicted on all the counts? That's a great question, Judge. Certainly, those universes of what is a and that's explored in the briefing. The jury wasn't equipped to make that decision because the language doesn't appear in Title 18. There was a lot of pretrial motion practice about what exactly is the charge here? What's a machine gun and what's a firearm and why? We waited through that whole morass just to get to trial and say, okay, here's the charges. These are machine guns. These are firearms. Mid-trial, the district court was pressing the government to say, which of these items of evidence go to count 12, the firearm count? And in the middle of the trial, the government was saying, well, these two Thurston items, Exhibits 23 and 24, are the only two. By the end of the trial, they're saying everything. And the implication is there's this universe of guns and all these things and the jury can conclude some of them are firearms and not machine guns. But the problem is the trial proof was extremely limited and that's explored in the briefing as well. So I think our core contention is the district court's error was not directing a verdict on that count because of the legal complexity and part of that issue. The jury couldn't decipher what was and what wasn't. The expert is telling them on the stand, I'm not relying on converts at all. How do you figure that the jury couldn't reach an informed decision? They knew enough to drop out 11 and find to acquit on 11 out of the 12. So it seems to demonstrate they could tell exactly what was going on. I see another good question. They weren't equipped to make the distinction between title 26 and title 18. They're not the only ones. That's a morale, it's a thicket. I mean, this, this, it's the flavor of this case sort of this is this because we say it is and this is that because we say it is. And jury said something along those lines when they acquitted Mr. Wick on 11 counts. And I think that has meaning, it has legal meaning. So let me try to answer the question better. Could the jury have found that that some of these items were firearms and not machine guns? I take that to be the essence of your question. My point is not on the converts language because the expert says no. The government explores this wrong of 921A3. The problem there is that isn't the case they tried. There's no testimony about design. The nature and number of the other parts that you need to make a functioning weapon was extremely lacking. They weren't pursuing that theory. That wasn't important to them at trial. So we're kind of constructing this backwards in time. And that's all in the brief too. Did you want to save some time for rebuttal? I want to answer your question. So if you don't have any more I will but I'm happy to stand here and let's save a minute and a half. Thank you. Good morning, Your Honors. May it please the court, my name is Leif Johnson for the Department of Justice. What you see here is the definition of firearm and it includes three sub-provisions. First, that the gun will either shoot or it's designed to shoot or it can be readily converted to shoot. Our position is that we've had sufficient evidence in this case of all three of those sub-definitions. Three of the guns that were introduced, the two Thurston guns and the Medeiros guns were demonstrated to shoot. The two Thurston guns were actually test fired and they were whole guns. They were welded together by Mr. Wick for his client and those guns were simply fired. And then the Medeiros gun was a complete gun that was simply assembled and fired. So on that basis alone we have will shoot. Turning to the readily convert prong of the statute, I would point the court to Judge McCune's ruling in the TRW rifle case which indicates to us that in fact the Title 18 provision does anticipate the assemblage of parts. And in that case this court held that putting together two halves of an M14 rifle into a sort of a hybrid semi-automatic carbine could be found to be readily restoring a fully automatic rifle if that semi- automatic carbine could be further modified with additional parts and labor to shoot automatically. And in that case the court held that readily restored was two hours or so. And in that case the court examined the term readily which we think has the same meaning in Title 18 as it has in Title 26. So here the question is, could this gun or could these guns be readily converted? And the testimony at trial over and over again was that with the addition of a single weld or two, depending on how many cuts the defendant left in these firearms, they could be converted to fire within 30 minutes to two hours depending on whether it was one or two cuts. So given the TRW rifle case and given, and we would simply ask the court to apply that same reasoning here, if you use the dictionary definition of converts rather than restore, I think I was looking at Webster's and Webster's, I think the appropriate definition would be to change from one form or function to taking something from an inoperable state into an operable state in which it can fire a projectile. Finally, we have the design prong of the statute which we argue in our brief. And I just wanted to point out for the court there that the evidence on the design prong was quite strong as well given what the defendant himself said about these rifles. And in the record at Exhibit 4, Mr. Wick made all these statements in his advertisements on GunBroker.com and this is part of his cross-examination testimony at trial. But the exhibit also came in and it basically is Mr. Wick saying, look, these are kits that you can finish out as a gun. You can finish them as a semi-automatic or as a machine gun. You can finish them out and you will appreciate how the milled feed ramp uses ammunition. He's essentially admitting in these statements that the design of these kits is to be put together and shot. And that's really all that that design prong of the statute requires. I think actually the reason we argued design first in our brief is because it is a little bit broader concept than the readily converts stat and prong of the first part of the definition. But in any event, in this case, there's complete crossover. These gun kits were both designed to be converted and they could readily be converted to do so. To get to your question, Judge Gould, about the acquittals and what effect that may have had and how that could sort of be explained, I would ask the court to look at the statements that the defendant made in his interview. And they're in the record at page 510 to 520. The defendant really did a nice job of protecting himself in his statement on the Title 26 charge. He basically said, you know, I was trying to do what was legal here. He had some interactions with the gunbroker.com and they basically told him you can't have one cut, you have to have two. And so he adjusted his practice. He was trying to sort of not sell machine guns. But at the same time, those statements, while they may have helped him on the machine gun charges with the jury, and certainly must have, he essentially admits the Title 18 charge. Because he says in that same statement that this is his business, this is what he's decided to do. He quit his job, he took up welding, and that's what he does. He remanufactures these formerly demilled kits that were useless and he remanufactures them to the point where they can be put together readily and shot. And so by making those statements, it helps explain the verdict and how you could have a conviction on a Title 18 charge and not on the Title 26 charge. It may have been a compromise, but I think in that light it makes some sense, Your Honor. And finally, I guess I would address the defendant's point. The acquittals here certainly show that the jury did compartmentalize the evidence and did take pains to read the statute and try to distinguish between simply manufacturing and selling a firearm as opposed to machine guns, which is a much more serious charge. If the court has no questions, I will sit down. Thank you. Well, I'll start with the notion that this is sort of a compromise verdict. The problem with that is that there's no language in 921A to get them there. So it's a matter of statutory construction. The district court's error was allowing that count to go to the jury in the first place. I want to be clear on the record. The government did not test fire these guns. That's not how they charge this case. Only two were test fired well into the prosecution. Those are the Thurston items, 23 and 24. The testimony there is not controverted. Mr. Wick welded the receiver sections that that client got from other online vendors together in his garage for a nominal fee. I think that's the government's best argument, that there's a factual basis for count 12. They don't make that argument, but I would say the occasional repairs language in the jury instruction F-25 covers that. That's the reason we even raised the case that way. So the design idea is interesting, but the record reflects and the expert testimony was all these are Uzi's. Every Uzi was manufactured in Israel originally. To come into this country legally, they're demilled, chopped into pieces. So at some point the design function as a line is sort of cut off. I mean, you can move them back that way, but under the government's construction of that phrase in the statutory definition, all of those demilled Uzi receivers would remain Title 18 firearms or Title 26 machine guns, I suppose, because they were designed to shoot. So there's some problems with using phrases that the jury didn't rely on. If you give me 10 seconds, converted is a term of art. It usually means from roughly co-equal states. So the classic example in the cases is you got a starter gun where you file the pin down or you take a semi-auto gun, remove the blocking bar, and make it fully automatic. That's usually how converts is used. It's not used how everybody wants it to be used here, including the district court. Thank you. Thank you. Thank both of you for coming over from Montana and for your arguments this morning. Case of the United States versus WIC is submitted.
judges: McKeown, Gould, Rothstein